IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION


RAMON DEWAYNE EASTMAN                                                PLAINTIFF


v.                                        Civil No. 6:20-CV-06052


SHERIFF MICHAEL MCCORMICK,                                          DEFENDANTS
CHIEF DEPUTY STEVEN ELROD,
CAPTAIN BRENDA COSGROVE, DR.
ABSALAM TILLEY and BRENDA
JOHNSON

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action filed pursuant to 42 U.S.C. § 1983.  Pursuant to the provisions

of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Robert T. Dawson, Senior United States

District Judge, referred this case to the undersigned for the purpose of making a Report and

Recommendation.

Currently before the Court is a Joint Motion for Summary Judgment by the Garland County

Defendants (McCormick, Elrod, and Cosgrove) and the Medical Defendants (Tilley and Johnson).

(ECF No. 58).

## I.  BACKGROUND

Plaintiff filed his Complaint on May 11, 2020.  (ECF No. 1).  Plaintiff's Complaint alleges

a violation of his constitutional rights based on the delay and denial of medical care for his

urogenital tract issues while incarcerated in the Garland County Detention Center ("GCDC").[1]

(*Id*.).  Specifically, Plaintiff alleges that from December 25, 2019, through March of 2020, he had

blood in his urine but Defendants refused to classify his condition as an emergency and refused to

---

[1] Plaintiff indicates on his Complaint that he was incarcerated starting December 20, 2019, for both new criminal
charges and a felony parole violation due to the new charges.  (ECF No. 1 at 4).

1

take him to the hospital. (*Id*. at 6-7).  He alleges he suffered from pain and blood in his urine, and

he soiled his clothes.  (*Id*. at 7).  Plaintiff further alleges that, with the start of the COVID-19

pandemic, Defendants' refusal to classify his condition as an emergency prevented him from going

to the hospital, because all non-emergency medical care was prohibited at that time. (*Id*.).  Instead,

he was prescribed four different antibiotics which did not work. (*Id*. at 6)  Plaintiff further alleges

that the denial and delay in care caused him to have infections, growths, and tumors in his bladder,

and could have caused him kidney damage.  (*Id*. at 6-7).  He alleges he still has blood in his urine

after five months of incarceration, and now needs surgery due to "growths/infection" in his

bladder, which "may have been prevented if I was treated properly and adequately." (*Id*. at 7).

Plaintiff proceeds against all Defendants in both their official and individual capacity for

both claims.  (*Id*. at 6-7).  Plaintiff seeks compensatory damages.  (*Id*. at 7).

Defendant filed their Joint Motion for Summary Judgment on March 28, 2021.  (ECF Nos.

58, 59, 60).  Plaintiff filed his Response on April 19, 2021.  (ECF Nos. 63, 64).  Defendants filed

a Joint Reply on April 26, 2021.  (ECF No. 65).  Defendants also filed a Motion to Strike Plaintiff's

Exhibit 7 on April 26, 2021.  (ECF Nos. 66, 67).  On May 21, 2021, the Court entered an Order

denying the Motion and stating that the admissible portions of Plaintiff's Exhibit 7 would be

considered in is determination of the Motion for summary Judgment.  (ECF No. 73).

## II.  LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences

in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio

Corp*., 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"Once a party moving for summary judgment has made a sufficient showing, the burden rests with

the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. ANALYSIS

Defendants argue that Summary Judgment in their favor is appropriate because (1.) Plaintiff has not met his burden to prove the subjective element of the deliberate indifference test;[2] (2) Plaintiff has failed to provide any verifying medical evidence of that he suffered harm because of the alleged delay in his appointment with the urologist; (3.) Plaintiff cannot meet his burden of proving injury-in-fact; (4.) Plaintiff cannot prove any official capacity claims; (5.) Plaintiff cannot prevail on a supervisory liability claim; and (6.) Defendants are entitled to qualified immunity. (ECF No. 59).

---

[2] As part of this argument, Defendants emphasize that Plaintiff frequently refused medications and refused to attend some appointments, which is supported by the summary judgment record. (ECF Nos. 59 at 9; 58-8; 58-9). Plaintiff disputes that he refused medication or transport to appointments. (ECF No. 64 at 3). Based on the summary judgment record before the Court, however, whether Plaintiff refused any care is not material to a decision on the merits.

Plaintiff argues that the failure to treat his condition as an emergency caused him to undergo "severe pain, humiliation, repu[tational] damages, emotional damages and defamation of character."[3]   (ECF No. 63 at 1).  He argues his condition was not treated as an emergency because his treatment would have been a financial liability.  (ECF No. 64 at 4).  Plaintiff also disputes several facts, which will be addressed as part of the analysis.

The Eighth Amendment[4] prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs.  *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012).  To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (citation omitted).

---

[3] Plaintiff also argues that he was not housed properly after he had surgery in May of 2020.  (ECF No. 63 at 4).  This claim is not part of his Complaint, and will not be addressed for this motion.

[4] The Eighth Amendment deliberate indifference standard applies to all denial of medical care claims including those by arrestees and pretrial detainees.  *Carpenter v. Gage*, 686 F.3d 644, 650 (8th Cir. 2012)(noting that while an arrestee's denial of medical care is properly analyzed under the Due Process Clause of the Fourteenth Amendment the analysis parallels that under the Eighth Amendment).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (citation omitted). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id.*

It is well settled that "[a] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal citation omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* (internal citations omitted). Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment, and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle,* 429 U.S. at 104–05. However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009). "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials 'ignored an acute or escalating situation or that [these] delays adversely affected his prognosis[,]'" *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (citations omitted), unless the need for medical attention is obvious to a layperson, in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay.

5

*See Schaub,* 638 F.3d at 919 (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999));

*Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995); *cf. Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir.

1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can

support a finding of an Eighth Amendment violation").

It is undisputed that Plaintiff's painful urination (dysuria) and blood in his urine

(hematuria) constituted an objectively serious medical need which satisfies the first prong of the

deliberate indifference standard.[5]  The summary judgment record before the Court, however, does

not support a finding that Defendants were deliberately indifferent to Plaintiff's serious medical

need.

Based on the summary judgment record, the consistent medical management approach for

Plaintiff's condition — both pre-incarceration and after coming under the care of a urologist —

has been antibiotics and Flomax.  In his Summary Judgment Response, Plaintiff stated he was

diagnosed with gross hematuria, internal bleeding, a history of family prostate cancer, and an

enlarged prostate by his primary care clinic prior to his incarceration in GCDC.  (ECF No. 63 at

2).  He states he was prescribed the drug tamsulosin (brand name Flomax[6]) for his enlarged

prostate and weak urinary flow.  (*Id*.).  Defendants provided a copy of Plaintiff's pharmacy record

from AllCare National Park Pharmacy.  (ECF No. 58-5).  This record indicates that Plaintiff was

prescribed an antibiotic (Ciprofloxacin) and Flomax on August 6, 2019.  (*Id*.).  Plaintiff does not

dispute this record.  Plaintiff also does not dispute that the prescription had expired when he was

brought into GCDC on December 20, 2019.  (ECF No. 64 at 1).

---

[5] Defendants later appear to argue that Plaintiff did not meet the objective prong of the deliberate indifference standard because he failed to provide verifying medical evidence that he was harmed by any alleged delay in treatment.  (ECF No. 59 at 16-19).  There is no dispute, however, that either dysuria or hematuria constituted an objectively serious medical need.
[6] https://pdr.net/drug-summary/Flomax-tamsulosin-hydrochloride-2893.5649 (last accessed Oct. 14, 2021).

When Plaintiff was taken for his initial visit to a urologist on April 16, 2020, Dr. Littlejohn prescribed a thirty-day course of antibiotic for "suspected prostatitis" and "likely urinary tract infection." (ECF No. 58-12 at 13). He also recommended a follow-up urine culture, and a cystoscopy to investigate a clot or mass in the bladder revealed during the CT scan performed that day. (*Id*.). Plaintiff was seen for a follow-up on April 22, 2020, when he underwent the cystoscopy. (ECF No. 58-12 at 28). A bladder mass was found, and a cystoscopy under anesthesia was scheduled. Dr. Littlejohn prescribed an antibiotic and continuation of Flomax. (*Id*.). Dr. Littlejohn prescribed a second antibiotic the following week. (ECF No. 58-2 at 12). Plaintiff underwent surgery on May 6, 2020, for "transurethral resection on the prostate and bladder mass." (ECF No. 58-12 at 23-24). He also received a bilateral retrograde pyelogram to examine his bladder, ureter, and kidneys that same day. (ECF No. 58-3 at 12). The mass was found to be benign. Plaintiff was to stay on Flomax, and his urinalysis, and other tests would be monitored. (ECF No. 58-12 at 23). Plaintiff's final diagnosis was "benign hematuria," meaning that "he did not have prostate or bladder cancer and his hematuria was not caused by any underlying serious condition." (ECF Nos. 58-3 at 13; 58-12 at 23). The cause of Plaintiff's hematuria is unknown, although Dr. Tilley opined it was most likely related to his "age and/or the anatomical structure of his prostate." (ECF No. 58-3 at 16-17). In his history to Dr. Littlejohn, Plaintiff reported that the hematuria had begun after he was struck by a vehicle in 2015. (ECF No. 58-12 at 10). On December 28, 2020, Dr. Littlejohn added a prescription for Oxybutin to treat urinary incontinence. (ECF No. 58-12 at 6-7).

Thus, the consistent core medical management plan for Plaintiff's condition, including after coming under the care of an outside urologist, has been antibiotics and Flomax, with pain

medication or other medication added as needed.  This leaves the question of his medical care in

GCDC for time at issue in his Complaint, December 20, 2019, through March 2020.

The summary judgment record indicates that Plaintiff was frequently and consistently

treated in GCDC with antibiotics, Flomax, and pain medication from December 30, 2019,[7] until

he first saw urologist Dr. Littlejohn on April 16, 2020.  (ECF No. 58-9).  This same medical

management plan, both prior to and after surgery, was continued under the guidance of urologist

Dr. Littlejohn.  (*Id*.).  Plaintiff does not dispute that he was given several courses of antibiotics

during this time.  He does dispute that he ever received Flomax at any time during his incarceration.

(ECF No. 64 at 2).  Plaintiff's argument concerning the administration of  Flomax in GCDC is

contradicted by the summary judgment record, (ECF No. 58-9; 58-12), and Plaintiff provides no

evidence to support his allegation that he never received Flomax while in GCDC.

Plaintiff was also seen frequently for his complaints of dysuria and hematuria while

incarcerated in GCDC, both prior to and after coming under the care of urologist Dr. Littlejohn.

Plaintiff's GCDC care record was succinctly summarized in Defendant Johnson's affidavit:

> At least 14 clinical encounters where he was seen by nurses for his complaints
> (including on 12/26/19, 1/1/20, 1/3/20, 1/11/20, 1/19/20, 2/13/20, 2/18/20, 3/6/20,
> 3/10/20, 3/11/20, 5/8/20, 5/23/20, 7/6/20, 10/8/20)
>
> At least 12 patient visits with Dr. Tilley, our Medical Director (including on
> 12/30/19, 2/5/20, 3/9/20, 3/18/20, 4/15/20, 5/11/20, 5/18/20, 6/22/20, 8/17/20,
> 9/18/20, 11/16/20, 12/21/20)
>
> Numerous lab tests, which all came back normal;
>
> Repeated urinalyses, almost every time Mr. Eastman submitted a written medical
> complaint/request.
>
> At least six off-site appointments with the urologist, including two cystoscopies, a

---

[7] Because Plaintiff's non-custodial prescription for Flomax had expired, the intake nurse could not refill the prescription, and instead scheduled Plaintiff for an appointment with Dr. Tilley on December 30, 2020.  (ECF No. 58-3 at 3-4; 58-9).

biopsy of a mass on his bladder, and a surgical transection of his prostate to help him urinate more easily

(ECF No. 58-4 at 3-4).

Plaintiff argues that Defendants refused to characterize his condition as an emergency due to financial concerns, and points to internal email conversations by Defendants in support of this argument.  (ECF No. 64 at 4).  These emails, however, started on April 28, 2020, *after* he first saw urologist Dr. Littlejohn on April 16, 2020.  The emails centered on a discussion of the cost of surgery and cancer treatment in the event he had bladder cancer.  (ECF No. 63-2).  Thus, the emails did not start until after the time period covered in his Complaint, and the concerns discussed had nothing to do with delaying his first appointment with a urologist.  Further, these same emails indicate that Defendants were able to enroll Plaintiff in Medicaid to cover the cost of any needed treatment on April 30, 2020. [8]  (ECF No. 63-2 at 16).

Nor does the mere fact that treatment cost was discussed state a claim for deliberate indifference, as prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment.  *Winslow v. Prison Health Services*, 406 Fed. App'x. 671, 674–75 (3d Cir. 2011)(unpublished); *see also*, *Reynolds v. Wagner,* 128 F.3d 166, 175 (3d Cir. 1997) ("[T]he deliberate indifference standard of *Estelle* does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society."); *Johnson v. Doughty,* 433 F.3d 1001, 1013 (7th Cir. 2006) ("The cost of treatment alternatives is a factor in determining what constitutes adequate, minimum-level medical care") (citations omitted)); *Caines v. Hendricks,* No. 05–1701, 2007 WL 496876, at *8 (D.N.J. Feb. 9, 2007) ("[I]t is not a constitutional violation for

---

[8] The Medical Defendants also attempted to get Plaintiff released on his own recognizance due to his medical condition ("Medical O.R."), but were also unsuccessful due to the seriousness of his criminal charges.  (ECF No. 60 at 8).

prison authorities to consider the cost implications of various procedures, which inevitably may result in various tests or procedures being deferred unless absolutely necessary.").

These same emails cited by Plaintiff also confirm that the delay of approximately a month between the time Defendant Tilley scheduled a referral for a urologist around March 16, 2020, (ECF No. 60 at 7) and the time he saw Dr. Littlejohn on April 16, 2020, was caused by the COVID-19 pandemic. (ECF No. 63-2 at 23). As noted by Defendants, the Arkansas Department of Health, in response to the COVID-19 pandemic, issued a directive instructing medical providers to stop performing elective or non-essential procedures and to minimize non-emergent visits. (ECF No. 60 at 7-8). As Dr. Littlejohn did not consider Plaintiff's condition to be emergent, he refused to schedule an appointment. (*Id*.).

Finally, Plaintiff has produced no objectively verifiable medical evidence that any of his urogenital issues were caused by the medical care he received while incarcerated in GCDC or that his prognosis for those issues was detrimentally affected, and nothing in the summary judgment record supports that argument.

Instead, the summary judgment record before the Court indicates that Plaintiff received frequent, consistent, and medically appropriate care for his dysuria and hematuria. Courts "hesitate to find an [E]ighth [A]mendment violation when a prison inmate has received medical care." *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990). Here, Plaintiff merely disagrees with the care provided, which does not rise to the level of a constitutional violation.

Accordingly, there is no question of material fact and Defendants are entitled to summary judgment as a matter of law.

## IV.  CONCLUSION

Accordingly, I recommend that the Joint Motion for Summary Judgment by the Garland County Defendants (McCormick, Elrod, and Cosgrove) and the Medical Defendants (Tilley and Johnson) (ECF No. 58) be GRANTED and Plaintiff's Complaint be DISMISSED WITH PREJUDICE.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **19th day of October 2021**.

/s/ *Barry A. Bryant*

HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE